IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STOCKADE COMPANIES, LLC AND STOCKADE FRANCHISING, LP | § § § | |
| V. | § § | A-17-CV-143 RP |
| KELLY RESTAURANT GROUP, LLC | § § | |

## ORDER

Before the Court are Defendant's Opposed Motion to Compel Arbitration (Dkt. No. 7) and Plaintiffs' Response (Dkt. No. 9). Defendant did not file a Reply brief. On April 5, 2017, the District Court referred the motion to the undersigned for resolution pursuant to 28 U.S.C. § 636(b)(1)(A), FED. R. CIV. P. 72 and Rule 1(c) of Appendix C of the Local Rules.[1]

## I. GENERAL BACKGROUND

Plaintiffs Stockade Companies, LLC and Stockade Franchising, LP (together "Stockade") own and license the proprietary trademarks for Sirloin Stockade, Coyote Canyon, and Montana Mike's restaurants. On June 4, 2014, Stockade entered into fifteen separate franchise agreements with Kelly Restaurant Group, LLC ("Kelly"). All of the franchise agreements have identical substantive terms and grant Kelly a non-exclusive franchise to operate a restaurant at the designated location and to use the appropriate Stockade system and proprietary marks. In return, Kelly agreed

---

[1] The Fifth Circuit has not directly ruled on whether a motion to compel arbitration is a dispositive or non-dispositive motion for purposes of § 636. *Lee v. Plantation of Louisiana, L.L.C.*, 454 F. App'x 358, 360 (5th Cir. 2011) ("[W]e need not reach the question of whether a motion to compel arbitration is a dispositive or non-dispositive motion for purposes of the standard of review by the district judge of the magistrate judge's order."). The First and Third Circuits, along with a district court in this circuit, however, have concluded that a motion to compel arbitration is a non-dispositive motion within the jurisdiction of a magistrate judge. *Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 133–35 (3d Cir. 2014); *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 13–15 (1st Cir. 2010); *Tige Boats, Inc. v. Interplastic Corp.*, 2015 WL 9268423, at *1–3 (N.D. Tex. Dec. 21, 2015).

to maintain the restaurants at or above minimum quality standards, pay royalties and fulfill other obligations. The Franchise Agreements also contain an arbitration clause and an exception to the arbitration clause for certain actions initiated by Stockade seeking injunctive relief.

Stockade alleges that beginning in May 2016 and continuing through the present, Kelly has failed to pay royalties to Stockade in violation of the Franchise Agreements. Stockade contends that Kelly's failure to cure the defaulted payments automatically terminated the Franchise Agreements. Stockade's suit argues that by continuing to operate the restaurants with Stockade's branding after the termination, Kelly is infringing on Stockade's trademark rights, and is in breach of the non-competition covenant. Stockade seeks a preliminary and permanent injunction enjoining Kelly from using or otherwise infringing on any of its Proprietary Marks and seeks attorney's fees and costs.

In the motion before the Court, Kelly argues that the arbitration clause contained in the franchise agreements requires Stockade to arbitrate the claims raised in this lawsuit, and seeks an order compelling arbitration and staying the case pending arbitration.

## II. STANDARD OF REVIEW

The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it "does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). As a result, courts analyze whether a party can be compelled to arbitrate using a two-step process. "First, we ask if the party has agreed to arbitrate the dispute." *Sherer v. Green Tree Serv. L.L.C.*, 548 F.3d 379, 381 (5th Cir. 2008). "While there is a strong federal policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). Instead, courts

2

"apply ordinary state-law principles that govern the formation of contracts." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir.1996). If the party opposing arbitration has agreed to arbitrate, courts "then ask if 'any federal statute or policy renders the claims nonarbitrable.'" *Sherer*, 548 F.3d at 381 (quoting *JP Morgan Chase & Co. v. Conegie*, 492 F.3d 596, 598 (5th Cir. 2007)).

### III.  ANALYSIS

Kelly argues that the arbitration clause contained in the franchise agreements requires Stockade to arbitrate the claims in this case. Kelly also contends that an arbitrator, not the Court, should determine whether Stockade's claims are subject to arbitration. Stockade responds that the parties did not agree to defer the arbitrability decision to an arbitrator, and, on the merits, the franchise agreement contains a carve-out provision explicitly permitting Stockade to seek temporary or injunctive relief in court to protect its trademarks and other rights.

**A.    The Arbitration Clause**

The parties do not dispute that their agreements contain an agreement to arbitrate most disputes that arise out of their franchise relationship. Nor do they dispute that there is a clause carving out of this general agreement a subset of claims on which Stockade has the right to file suit for injunctive relief in a court. The general language of the arbitration clause states:

> 21.01  <u>Duty to Arbitrate</u>. . . .[T]he parties agree that any and all controversies, claims and disputes between them arising out of or related to this Agreement that cannot be amicably settled shall be finally resolved by submitting such matter to the American Arbitration Association ("AAA") in either Denver, Colorado or Austin, Texas, in Franchisor's sole discretion, for binding arbitration under the AAA's Commercial Arbitration Rules . . .

Dkt. No. 7-2 at 45, § 21.01 (hereinafter "Arbitration Clause"). The next section of the clause, however, states:

> 21.02  <u>Franchisor's Right to Seek Injunctive Relief</u>. Notwithstanding any provision contained in this Section 21, Franchisor may, at its sole option, institute an action or actions for temporary or preliminary injunctive relief or seeking any other temporary

3

or permanent equitable relief against Franchisee that may be necessary to protect its
Proprietary Marks or other rights or property. . .

*Id.* at Sec. 21.02 (hereinafter "Exclusion Clause"). The issue here is whether Stockade's claims in this case fit within the Exclusion Clause. Before reaching that issue, however, the Court must briefly address whether it, or an arbitrator, has the power to decide that question.

**B.** **Arbitrability**

The basic rule on arbitrability is that it is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT & T Tech., Inc. v. Commc'n Workers*, 475 U.S. 643, 649 (1986) and *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In other words, "the law presumes that courts have plenary power to decide the gateway question of a dispute's 'arbitrability' —i.e., 'whether [the parties] agreed to arbitrate the merits.'" *Houston Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 408 (5th Cir. 2014) (citing *First Options*, 514 U.S. at 942). The Supreme Court has explained that "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter.*"* *First Options*, 514 U.S. at 943. Kelly "bear[s] the burden of demonstrating clearly and unmistakably that the parties agreed to have the arbitrator decide that threshold question of arbitrability." *Id.* (quoting *Gen. Motors Corp. v. Pamela Equities Corp.*, 146 F.3d 242, 249 (5th Cir. 1998)).

Kelly has failed to carry this burden. It cannot point to any aspect of the contract which shows "a willingness [by Stockade] to be effectively bound by the arbitrator's decision on that point," *First Options*, 514 U.S. at 946, or which "transfer[s] the power to decide threshold questions of

4

arbitrability to the arbitrator," *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). The fact that there is no express delegation clause in the agreements is noteworthy because silence on the issue of arbitrability "favor[s] submitting the question to the courts, lest the arbitrator 'force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.'" *ConocoPhillips, Inc. v. Local 13-0555 United Steelworkers Int'l Union*, 741 F.3d 627, 631(5th Cir. 2014) (quoting *First Options*, 514 U.S. at 945).

> Recognizing the lack of an express delegation clause, Kelly points out that
>
> [t]he Parties agreed in the Franchise Agreements to arbitration subject to the AAA's Commercial Rules of Arbitration, which includes Rule 7 (Jurisdiction) which grants the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

Dkt. No. 7 at 10. While it is true that the Fifth Circuit has held that the adoption of the AAA rules to govern arbitration proceedings "presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability," *Cooper v. WestEnd Capital Mgmt.*, L.L.C., 832 F.3d 534, 546 (5th Cir. 2016), this rule does not apply when the agreement contains an express exclusion to the arbitration clause. A district court in the Eastern District of Texas was recently presented with this very situation in *Archer and White Sales, Inc. v. Henry Schein, Inc.*, 2016 WL 7157421 at * 7 (E.D. Tex. Dec. 7, 2016). There, the court rejected the defendant's argument that the case should be referred to an arbitrator to determine arbitrability due to the parties' incorporation of the AAA rules in their agreement. *Id.* at *7. The court found that the AAA rules did not mandate referral because the claims in the lawsuit fell within the terms of the express carve-out provision from the arbitration clause, noting that "it would be senseless to have the AAA rules apply to proceedings that are not subject to arbitration." *Id.* The court explained that

5

there is no reason to believe that incorporation of the AAA rules, including the AAA
rule that delegates the question of arbitrability to the arbitrator, should indicate a
clear and unmistakable intention that the parties agreed to arbitrate the question of
arbitrability in these circumstances—when an action falls squarely within the clause
excluding actions like this from arbitration.

*Id.*[2] Based upon the foregoing, the Court finds that Kelly has not demonstrated by clear and unmistakable evidence that the parties agreed to arbitrate the question of arbitrability. The Court therefore must decide the question of whether the claims in this case fall within the Exclusion Clause of the agreement to arbitrate.

C.  **Must the claims in this suit be arbitrated?**

Kelly argues that Stockade's trademark infringement and false designation of origin claim, as well as its breach of the non-competition covenant claim fall within the arbitration clause because they "arise out of the Franchise Agreements." Dkt. No. 7 at 6. Kelly further contends that the claims do not fall within the Exclusion Clause because (1) they are not "actions" within the meaning of the franchise agreements, (2) they are not "necessary" to protect Stockade's property and (3) the Exclusion Clause is vague. These arguments are meritless and ignore the plain language of the contract, and particularly the Exclusion Clause.

First, Kelly argues that Stockade's claims are not "actions" within the meaning of the Exclusion Clause because the clause "does not specify the forum and does not define 'action' to sufficiently distinguish it from a controversy, claim, or dispute that is subject to arbitration." Dkt.

---

[2]*See also*, *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 81 (Del. 2006) (addressing a broad arbitration clause that contained a clause allowing injunctive relief to be pursued in court and holding that "[s]ince this arbitration clause does not generally refer all controversies to arbitration, the federal majority rule does not apply, and something other than the incorporation of the AAA rules would be needed to establish that the parties intended to submit arbitrability questions to an arbitrator").

No. 7 at 7. This argument is illogical. The Exclusion Clause is quoted earlier. Its language is clear, stating that "[n]otwithstanding any provision contained in this Section 21," Stockade has the right to file "an action or actions for temporary or preliminary injunctive relief or seeking any other temporary or permanent equitable relief." Dkt. No. 7-2 at 31 § 21.02. The word "action" does not stand alone, but rather is qualified by the language "for temporary or permanent injunctive relief." There can be no colorable argument that "an action for temporary or permanent injunctive relief" is insufficiently distinguished from the "controversies, claims and disputes" that the parties agree to arbitrate in the prior section. And this case fits squarely within the language of § 21.02. Stockade is seeking injunctive relief under the Lanham Act to protect its marks and to enforce the non-compete provision. It is plainly an "action for temporary or injunctive relief" relating to its proprietary marks.

Next, Kelly argues that Stockade's request for injunctive relief on the non-compete agreement falls outside of the Exclusion Clause because it is not "necessary to protect Stockade's Proprietary Marks or other rights or property." As Stockade points out, Kelly ignores the language in the Exclusion Clause permitting Stockade to seek injunctive relief to protect Stockade's "other rights," which would clearly include a contractual right to enforce a non-competition covenant. In addition, the Court finds that Stockade's trademark infringement and false designation of origin claim are "necessary" to protect its proprietary marks. It is the Court's duty "to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc.*, 489 U.S. at 478. Kelly's argument asks the Court to ignore the contract's terms.

Lastly, Kelly argues that the second sentence of the Exclusion Clause renders the entire clause vague and open-ended, and dictates that all issues—including actions for injunctive

7

relief—must be decided in arbitration. The sentence at issue states: "However, in Franchisor's sole discretion, the final right of determination of the ultimate controversy, claim or dispute shall be decided by arbitration as aforesaid and recourse to the courts shall thereafter be limited to seeking an order to enforce an arbitral award." Dkt. No. 7-2 at 29 § 21.02. This language, however, is not at odds with the prior sentence. Read together, in context, the two sentences provide that Stockade has reserved the right to go to a court to obtain an injunction to enforce its Proprietary Marks or "other rights or property," but that at, Stockade's discretion, it may submit the ultimate issues beyond injunctive relief to arbitration as called for in § 21.01. Nothing in this language limits or impacts Stockade's right to seek the injunctive relief it is asking for in this Court—a right clearly carved out by the Exclusion Clause of the parties' franchise agreements.

## IV. CONCLUSION

Based upon the foregoing, Stockade's trademark infringement and false designation of origin and breach of non-competition covenant claims seeking preliminary injunctive relief fall within the Exclusion Clause of the franchise agreements at issue in this lawsuit. Kelly's Opposed Motion to Compel Arbitration (Dkt. No. 7) is **THEREFORE DENIED**.

SIGNED this 11th day of May, 2017.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE