IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STOCKADE COMPANIES, LLC and<br>STOCKADE FRANCHISING, LP, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:17-CV-143-RP |
| KELLY RESTAURANT GROUP, LLC, | § § § | |
| Defendant. | § § | |

## ORDER

Before the Court in the above-entitled matter is Plaintiffs' Motion for Preliminary Injunction. (Dkt. 14). Having reviewed the instant motion, relevant law, and the entire case file, the Court finds that the motion should be **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND AND OVERVIEW

Plaintiffs Stockade Companies, LLC and Stockade Franchising, LP (collectively, "Plaintiffs" or "Stockade") own and license the trademarks for the Sirloin Stockade, Coyote Canyon, and Montana Mike's restaurants. (Compl., Dkt. 1, ¶ 1). On June 4, 2014, Stockade entered into fifteen franchise agreements with Defendant Kelly Restaurant Group ("KRG" or "Defendant"). (*Id.* ¶ 17). KRG defaulted on the royalty payments due under the franchise agreements in May 2016. (*Id.* ¶ 25). On January 30, 2017, Stockade sent KRG a Notice of Default, Demand for Payment, and Opportunity to Cure (collectively, "the Default Notice") (*Id.* ¶ 27). The Default Notice stated that KRG was in default and gave KRG until February 10, 2017 to pay all amounts due. (*Id.*). KRG failed to cure the default by that date. (*Id.* ¶ 28). Stockade then sent KRG a Notice of Termination, which advised that the franchise agreements had terminated and that KRG "was to immediately cease use"

1

of any proprietary marks. (*Id.* ¶ 29). KRG has continued to use Stockade's proprietary marks and to operate multiple Sirloin Stockade, Coyote Canyon, and Montana Mike's restaurants. (*Id.* ¶ 30).

On February 24, 2017, Stockade filed suit in this Court. (Dkt. 1). It subsequently filed a Motion for Preliminary Injunction, which asks the Court to (1) immediately enjoin KRG from infringing on or otherwise using any of Stockade's proprietary marks, (2) immediately enjoin KRG from violating the noncompetition provisions in Section 7.04 of the franchise agreements, and (3) immediately enjoin KRG from using or transferring Stockade's confidential information. (Mot. Prelim. Inj., Dkt. 14, at 2–3).

KRG does not dispute Stockade's allegations regarding KRG's default and ongoing use of Stockade's proprietary marks. (Resp., Dkt. 18). Instead, it argues that it "wants nothing more than to de-brand its operating restaurants" and "has, on multiple occasions, offered to de-brand pursuant to a reasonable de-branding schedule." (*Id.* at 5). KRG is especially opposed to any suggestion by Stockade that the non-competition provisions of the franchise agreements should be interpreted to prevent KRG from operating the restaurants in question even after successful re-branding. (*Id.* at 9).

The Court held a hearing on the Motion for a Preliminary Injunction on May 12, 2017. (Dkt. 22).

## II. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief must "carr[y] the

2

burden of persuasion on all four requirements." *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

### III. DISCUSSION

Stockade requests three separate types of injunctive relief. Specifically, it asks the Court to enjoin KRG from (1) infringing on or otherwise using any of Stockade's proprietary marks; (2) violating the noncompetition provisions in Section 7.04 of the franchise agreements; and (3) using or transferring Stockade's confidential information. (Mot. Prelim. Inj., Dkt. 14, 2–3). The Court will apply the four-part rubric detailed above to each of these requests in turn.

*A. KRG's Use of Stockade's Proprietary Marks*

Stockade asserts that it is entitled, under both the Lanham Act and Texas law, to an injunction preventing KRG from infringing on or otherwise using any of Stockade's proprietary marks. (*Id.* at 2). The Court agrees.

Stockade's proprietary marks are registered with the United States Patent and Trademark Office, (Mot. Prelim. Inj., Dkt. 14, at 4–5), and KRG does not dispute that it continues to operate restaurants using those proprietary marks. Where such infringement exists, "all that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626–27 (5th Cir. 2013); *see also Quantum Fitness Corp. v. Quantum Lifestyle Ctrs. L.L.C.*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999) ("When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of those goods or services."). Stockade therefore easily meets both the first and second elements of the preliminary injunction standard.

Stockade also satisfies the third element. As detailed above, Stockade has established ongoing irreparable harm to its trademarks and business. KRG, meanwhile, argues that it would "suffer significant harm" because it would have to "close its restaurants in Kansas and Oklahoma, breach its Master Lease and contracts with third party vendors, attempt to pay rent without any income, and lay off its more than 500 employees." (Resp., Dkt. 18, at 23). Setting aside the fact that KRG has had since February 2017, at a minimum, to address these issues, the Court notes that each of these alleged harms would result not from de-branding but instead from enforcement of the non-competition provisions in Section 7.04 of the franchise disagreements, a separate type of relief that is discussed below. Stockade has therefore satisfied the Court that, with respect to its request that KRG be enjoined from infringing on its proprietary marks, the balance of equities tips in its favor.

The Court is also satisfied that enjoining KRG from infringing on or otherwise using Stockade's proprietary marks would be in the public interest. "Trademark laws exist not to 'protect' trademarks but to protect the consuming public from confusion, concomitantly protecting the trademark owner's right to a nonconfused public." *Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.*, 725 F.2d 336, 348 (5th Cir. 1984). Enjoining KRG's use of Stockade's proprietary marks therefore protects not just Stockade's interest, but the interest of the public as a whole.

Given the above, the Court is satisfied that Stockade is entitled to a preliminary injunction regarding its trademark infringement claims. Indeed, KRG itself seems to concede this point. (Def.'s Prop. Order, Dkt. 25, at 1 ("Plaintiffs have established that they are entitled to preliminary injunctive relief based on their claims under the Lanham Act.")). The Court therefore **GRANTS** Stockade's request that KRG be enjoined from infringing on or otherwise using any of Stockade's proprietary marks.

*B. The Non-Competition Provisions in Section 7.04*

Stockade also seeks an injunction enjoining KRG violating the noncompetition provisions in Section 7.04 of the franchise agreements. Section 7.04 provides in relevant part:

> Franchisee . . . shall not have any interest as an owner, investor, partner, lender, lessor, director, officer, manager, employee, consultant, representative, or agent, or in any other capacity shall not directly or indirectly enter into the employ, or work in concert with or serve as consultant for, any person, partnership, corporation, association, organization or other entity engaged in the operation of an Applebee's, Bonanza Steakhouse, Chili's, Furr's Family Dining, Golden Corral, HorneTown Buffet, Logan's Roadhouse, Lone Star Steakhouse, LongHorn Steakhouse, Luby's, Old Country Buffet, Outback Steakhouse, Ponderosa Steakhouse, Ryan's, Santa Fe Cattle Company, Sizzler, Sweet Tomatoes, Texas Land & Cattle, [or] Texas Roadhouse restaurant (collectively, the "Named Brands") **or any concept which is similar to any franchise concept owned, operated, license[d], or franchised by Franchisor** ("Similar Concepts" and, together with the Named brands, the "Excluded Brands") during the term of this Agreement and any extension thereof **within a radius of fifty (50) miles from any Franchisor-owned or affiliate-owned restaurant or any franchise concept owned, operated, licensed, or franchised by Franchisor, wherever situated and operated by whomever, then open or under construction or under lease or purchase commitment** (provided that Franchisee receives written notice from Franchisor of such restaurants or concepts then open, under construction, or under lease or purchase commitment) . . . for a period of three (3) years following the expiration or termination of the Agreement.

(Compl. ¶ 21) (emphasis added).

Stockade argues that it is "likely to succeed on its claims that KRG is violating its post-termination obligation" under Section 7.04 because it "continues to operate Sirloin Stockade, Coyote Canyon, and Montana Mike's restaurants after termination." (Mot. Prelim. Inj., Dkt. 14, at 20–21). At the hearing that took place on May 12, 2017, however, Stockade suggested that Section 7.04 might operate to prohibit KRG from operating any restaurant in the same cities as its current Stockade franchises, even after those franchises were de-branded. As KRG explains in its response to the instant motion, the plain language of Section 7.04 does not support this reading. After KRG

5

de-brands the franchises in question, those restaurants will not fall within a 50-mile radius of any other Stockade-owned or affiliated restaurant currently in operation. (Resp., Dkt. 18, at 20).

To the extent Stockade seeks to enjoin KRG from violating its obligations under Section 7.04 by "continu[ing] to operate Sirloin Stockade, Coyote Canyon, and Montana Mike's restaurants after termination," the Court's conclusion in Section III(A)—that KRG should be and is enjoined from infringing on or otherwise using any of Stockade's proprietary marks—moots Stockade's argument. To the extent Stockade seeks to use Section 7.04 to prevent KRG from operating any restaurant at the franchise locations, the Court is not satisfied that Stockade is likely to succeed on the merits. Stockade's request that the Court enjoin KRG violating the noncompetition provisions in Section 7.04 is therefore **DENIED**.

*C. KRG's Use of Stockade's Confidential Information*

Stockade finally argues that it is "likely to succeed on its claim that [KRG] is violating the franchise agreements' restrictions on the use of confidential information." (Mot. Prelim. Inj., Dkt. 14, at 21). In doing so, it argues merely that "[KRG] continues to operate Sirloin Stockade, Coyote Canyon, and Montana Mike's restaurants after termination" and that, "[i]n doing so, [KRG] continues to impermissibly use Stockade's confidential information." (*Id.* at 21). The Court's conclusion in Section III(A)—that KRG should be and is enjoined from infringing on or otherwise using any of Stockade's proprietary marks—renders this argument moot. Because KRG will be enjoined from operating any Stockade-branded restaurants, there is no evidence to suggest it will be in violation of the franchise agreements' restrictions on the use of confidential information. With respect to this form of requested relief, Stockade's motion is therefore **DENIED**.

## IV. CONCLUSION

Plaintiffs' Application for Preliminary Injunction, (Dkt. 14), is hereby **GRANTED IN PART AND DENIED IN PART**, consistent with the terms of this Order.

Defendant Kelly Restaurant Group and all who act in participation with it are **ENJOINED** from directly or indirectly, at any time or in any manner: (1) identifying KRG-owned restaurants or businesses as a current or former Sirloin Stockade, Coyote Canyon, or Montana Mike's restaurant, or as being a licensee of or otherwise associated with Stockade; (2) using any Stockade proprietary marks that have been registered with the United States Patent Office, including but not limited to USPTO Regs. No. 2766896, 1135350, 2217119, 2302957, 5072289, 2802353, 2399480, and 2399479 and any colorable imitation thereof; (3) using any other indicia of a Stockade franchise in any manner or for any purpose; or (4) utilizing for any purpose any trade name, trade or service mark, or other commercial symbol that suggests or indicates a connection or association with Stockade.

To effectuate this relief, Defendant Kelly Restaurant Group and all who act in participation with it are **HEREBY ORDERED** to de-brand the franchise restaurants in question within 21 days of the date of this Order. Specifically, KRG must (1) remove all signs and sign faces that utilize Stockade's proprietary marks; (2) return to Stockade or destroy all marketing materials, menus, and other materials containing any Stockade proprietary marks or otherwise relating to a Sirloin Stockade, Coyote Canyon, or Montana Mike's restaurant; and (3) remove all Stockade proprietary marks affixed to uniforms.

**IT IS FURTHER ORDERED** that (1) KRG maintain each restaurant in accordance with the standards set forth in the franchise agreements until that restaurant is de-branded, and (2) KRG not sell any Stockade gift cards during the de-branding period.

**IT IS FINALLY ORDERED** that KRG file a written report outlining its compliance with this Order on or before June 21, 2017.

**SIGNED** on May 31, 2017.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE