# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| STOCKADE COMPANIES, LLC AND STOCKADE FRANCHISING, LP | § § § | |
| V. | § § | A-17-CV-143 RP |
| KELLY RESTAURANT GROUP, LLC MICHAEL KELLY | § § § | |

## ORDER

Before the Court are Defendants' Opposed Motion for Attorneys' Fees and Costs (Dkt. No. 96); Plaintiffs' Objection (Dkt. No. 98); Defendants' Reply (Dkt. No. 101); and Plaintiff's Sur-Reply (Dkt. No. 104). The District Court referred the motion to the undersigned for resolution pursuant to 28 U.S.C. § 636(b)(1)(A), FED. R. CIV. P. 72 and Rule 1(c) of Appendix C of the Local Rules.

## I. GENERAL BACKGROUND

Plaintiffs Stockade Companies, LLC and Stockade Franchising, LP (together "Stockade") own and license the proprietary trademarks for Sirloin Stockade, Coyote Canyon, and Montana Mike's restaurants. On June 4, 2014, Stockade entered into fifteen separate franchise agreements with Kelly Restaurant Group, LLC ("KRG"). After KRG defaulted on the royalty payments due under the franchise agreements, Stockade sent KRG a Notice of Default, Demand for Payment, and Opportunity to Cure. The Default Notice stated that KRG was in default and gave KRG until February 10, 2017 to pay all amounts due. KRG failed to cure the default by that date. Stockade then sent KRG a Notice of Termination, which advised that the franchise agreements had terminated and that KRG "was to immediately cease use" of any proprietary marks. KRG has continued to use Stockade's proprietary marks and to operate multiple Sirloin Stockade, Coyote Canyon, and Montana Mike's restaurants.

On February 24, 2017, Stockade sued KRG and Michael Kelly (together "Kelly") alleging trademark infringement and false designation of origin, breach of non-competition covenant, and misappropriation of trade secrets, and sought to immediately and permanently enjoin Kelly from using or otherwise infringing on any of its proprietary information and from violating the Franchise Agreements. On May 11, 2017, the Court denied Kelly's Motion to Compel Arbitration after concluding that the Franchise Agreements contained a carve-out provision explicitly permitting Stockade to seek temporary or injunctive relief in court to protect its trademarks and other rights. See Dkt. No. 20.

On May 31, 2017, the District Court granted in part and denied in part Stockade's Motion for Preliminary Injunction. See Dkt. No. 26. The Court granted Stockade's request to enjoin Kelly from infringing or otherwise using any of Stockade's proprietary marks, but denied its request to enjoin Kelly from violating the non-competition provisions in Section 7.04 of the franchise agreements or to enjoin Kelly from using or transferring Stockade's confidential information. *Id.* In that order, the Court directed Kelly to de-brand its Sirloin Stockade, Coyote Canyon and Montana Mikes' franchise restaurants within 21 days. Kelly then re-branded the restaurants as "Kansas Buffets."

On July 28, 2017, Stockade filed another Motion for Preliminary Injunction, this time seeking an order enjoining Kelly from operating "family-style buffets" at former Stockade restaurants. Specifically, Stockade asked the Court to enjoin Kelly from "using Stockade's confidential information in violation of the parties' [f]ranchise [a]greements," "misappropriating Stockade's trade secrets in violation of the Texas Uniform Trade Secrets Act," and "infringing on Stockade's trade dress in violation of the Lanham Act." Because the District Court determined that Stockade had "not demonstrated a high likelihood of success on any of its three claims," the Court denied the Motion for Preliminary Injunction. See Dkt. No. 86.

2

On October 30, 2017, Kelly filed a Motion to Dismiss seeking to dismiss all of Stockade's claims under Federal Rule of Civil Procedure 12(b)(6). See Dkt. No. 88. On December 6, 2017, Stockade filed "Plaintiffs' Notice of Voluntary Dismissal of Claims Without Prejudice" seeking to "dismiss all claims against all Defendants without prejudice." See Dkt. No. 92. On December 7, 2017, pursuant to Federal Rule of Civil Procedure 41, the District Court ordered that "Plaintiffs' claims against all defendants in this action be dismissed without prejudice" and ordered that "all costs shall be taxed to the party incurring the same." See Dkt. No. 94.

Kelly has now filed the instant Motion for Attorneys' Fees and Costs requesting the Court to award it $369,221.00 in attorneys' fees and $5,838.21 in costs.

## II. STANDARD OF REVIEW

Traditionally, under the American rule, "each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts LLP. v. ASARCO LLC*, – U.S.–, 135 S. Ct. 2158, 2160 (2015). Accordingly, "[a] district court may not award attorneys' fees 'unless a statute or contract provides' the basis for such an award." *Spear Mktg., Inc. v. BancorpSouth Bank*, 844 F.3d 464, 470 (5th Cir. 2016) (quoting *Baker Botts*, 135 S.Ct. at 2164). Federal Rule of Civil Procedure 54(d)(2) provides the *procedure* for the prevailing party, by motion, to specify the statute, rule, or other grounds entitling them to the award. Fed. R. Civ. P. 54(d)(2). *See White v. Regional Adjustment Bureau, Inc.*, 2013 WL 12175083, *4 (N. D. Tex. June 16, 2013) (noting that party must identify a statute or rule to recover fees under Rule 54). However, Rule 54(d)(2) does not supply the substantive prerequisites for obtaining attorneys' fees and expenses; rather, those requirements are "governed by the same law [*e.g.*, federal or state] that serves as the rule of decision for the substantive issues in the case." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). "One basic substantive requirement is that the requested fees and expenses be recoverable in the first place." *Rodriguez v. Quicken Loans, Inc.*, 257 F. Supp. 3d 840, 844 (S.D. Tex. 2017). "Even when

3

a party has satisfied Rule 54(d)(2)'s procedural requirements and the governing substantive law permits recovery, the decision whether to award attorney's fees and expenses remains subject to the district court's equitable discretion." *Id.*

Although Kelly argues that Texas state law applies to the award of attorneys' fees in this case, Stockade's lawsuit alleged both state and federal claims. In addition, the District Court applied both federal and state law in granting and denying Stockade's Motions for Preliminary Injunction. See Dkt. Nos. 26 and 86. Accordingly, Texas state law *and* federal law govern the issue of attorneys' fees in this case. *See Rodriguez*, 257 F. Supp.3d at 844 (applying federal substantive law to federal claims and state law to state claims in determining fees). Regardless, however, "[f]ederal and Texas law both recognize that although 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser,' such recovery is permissible if explicitly provided for by statute or an enforceable contract." *Id.* at 845 (quoting *Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448 (2007) and *Intercont'l Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 & n.7 (Tex. 2009)).

## II. ANALYSIS

Kelly argues that it is the prevailing party in the case because Stockade voluntarily dismissed this lawsuit to avoid an unfavorable judgment on the merits. Kelly argues that it is entitled to $369,221.00 in attorneys' fees and $5,838.21 in costs pursuant to Federal Rule of Civil Procedure 54(d), Section 19.11 of the Franchise Agreements, Section 134A.005 of the Texas Civil Practices & Remedies Code, and Federal Rule of Civil Procedure 41(d).

In response, Stockade argues that the Court should deny the Motion because the arbitration clause contained in the Franchise Agreements requires Kelly to arbitrate its claim for attorneys' fees.[1]

---

[1] Interestingly, the parties have reversed their previous positions on the issues of arbitration and arbitrability. In Kelly's previous Motion for Compel Arbitration, it had argued that the

4

Stockade also contends that an arbitrator, not the Court, should determine whether Kelly's claim for attorney's fees is subject to arbitration. Alternatively, Stockade argues that "[t]he Franchise Agreements only allow fees to the prevailing *plaintiff*, not a prevailing defendant, and in any event [Stockade] did not prevail." Dkt. No. 98 at 6. Because the question of arbitrability determines whether this Court has jurisdiction to even address the issue of attorneys' fees, the Court must address this issue first.

**A.    Arbitration Issues**

The parties' Franchise Agreements contain the following arbitration clause:

> 21.01   Duty to Arbitrate. . . .[T]he parties agree that any and all controversies, claims and disputes between them arising out of or related to this Agreement that cannot be amicably settled shall be finally resolved by submitting such matter to the American Arbitration Association ("AAA") in either Denver, Colorado or Austin, Texas, in Franchisor's sole discretion, for binding arbitration under the AAA's Commercial Arbitration Rules . . .

Dkt. No. 7-2 at 45, § 21.01 (hereinafter "Arbitration Clause"). The next section of the clause, however, states:

> 21.02   Franchisor's Right to Seek Injunctive Relief. Notwithstanding any provision contained in this Section 21, Franchisor may, at its sole option, institute an action or actions for temporary or preliminary injunctive relief or seeking any other temporary or permanent equitable relief against Franchisee that may be necessary to protect its Proprietary Marks or other rights or property. . .

*Id.* at Sec. 21.02 (hereinafter "Exclusion Clause").

The Court has already determined that Stockade's claims in this lawsuit fall within the Exclusion Clause of the Franchise Agreements. See Dkt. No. 20 at 8 ("Based upon the foregoing, Stockade's trademark infringement and false designation of origin and breach of non-competition

---

arbitration clause required Stockade to arbitrate the case and that the arbitrator had to determine the issue of arbitrability. See Dkt. No. 7. Stockade had argued the opposite. See Dkt. No. 9. In the instant Motion, the parties reverse these positions.

covenant claims seeking preliminary injunctive relief fall within the Exclusion Clause of the franchise agreements at issue in this lawsuit."). The Court also previously ruled that there was not "clear and unmistakable evidence that the parties agreed to arbitrate the question of arbitrability." *Id.* at 6. For the same reasons set out in that order, the Court similarly finds the Stockade has failed to present clear and unmistakable evidence that the parties agreed to arbitrate the question of arbitrability with regard to Kelly's claim for attorney's fees. The Court must therefore determine whether the Court has jurisdiction to review the claim for attorney's fees.

Because this Court has jurisdiction over the underlying claims in this case, it follows that it has jurisdiction to review the instant claim for attorneys' fees. As the Northern District of Texas has reasoned:

> This Court has the most intimate knowledge of the procedural history of this case and is the most appropriate arbiter of the reasonableness of the fees incurred. To remand this case to the arbitrator for determination of the reasonableness of fees incurred in this forum would be unnecessarily costly, inefficient, and time consuming. Thus, the Court concludes it has jurisdiction to award fees and costs incurred in this litigation.

*Radiant Sys., Inc. v. Am. Scheduling, Inc.*, 2006 WL 2583266, at *3 (N.D. Tex. Sept. 7, 2006). Moreover, "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). Thus, courts may award costs and attorneys' fees after an action is dismissed for want of jurisdiction. *See Id.* ("This Court has indicated that motions for costs or attorney's fees are independent proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree") (internal citations omitted). Based upon the foregoing, the Court finds that it has jurisdiction to review the claim for attorneys' fees in this case.

**B.     Attorney's Fees**

Kelly argues that it is the prevailing party under Rule 54(d)(1) and is thus entitled to attorneys' fees and costs under Section 19.11 of the Franchise Agreements, Section 134A.005 of the Texas Civil Practices & Remedies Code and Federal Rule of Civil Procedure 41(d). Before addressing whether Kelly is entitled to attorneys' fees and costs under these statutes and rules, the Court must first decide the threshold issue of whether Kelly is in fact the prevailing party in this case. *See Energy Intelligence Group, Inc. v. Kayne Anderson Capital Advisors, LLC*, 2018 WL 2048896, at *13 (S.D. Tex. May 2, 2018) ("Whether a party is the prevailing party is a threshold inquiry for an award of costs and attorney's fees.").

**1.     Is Kelly the Prevailing Party?**

Kelly argues that it is the prevailing party in the case because Stockade voluntarily dismissed this lawsuit to avoid an unfavorable judgment on the merits. Specifically, Kelly argues that Stockade voluntarily dismissed the case after the District Court denied its Motion for Preliminary Injunction and before the District Court had ruled on the Kelly's Motion to Dismiss. Kelly argues that "[i]t is clear based on timing alone that Stockade's 'voluntary' dismissal was filed to avoid an unfavorable merits ruling on its pending trade dress, trade secret and confidentiality claims." Dkt. No. 96 at 2. The Court disagrees.

In order for a litigant to be a prevailing party for purposes of attorneys' fees, there must be a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. & Care Home v. W.V. Dept. of Health & Human Res.*, 532 U.S. 598, 605 (2001). As the Supreme Court has noted, "[n]o material alteration of the legal relationship between the parties occurs until" one of the parties "becomes entitled to enforce a judgment, consent decree, or settlement against the [other]."

7

*Farrar v. Hobby*, 506 U.S. 103, 113(1992). The Fifth Circuit has held that a defendant can be considered a prevailing party if the plaintiff voluntarily dismisses a case *with prejudice* because "a dismissal with prejudice gives the defendant the full relief to which he is legally entitled and is tantamount to a judgment on the merits." *Schwarz v. Folloder*, 767 F.2d 125, 130 (5th Cir. 1985); *see also*, *Fox v. Vice*, 594 F.3d 423, 426 (5th Cir. 2010) (finding that defendant was prevailing party where the district court had granted appellees' motion for judgment on the pleadings and dismissed plaintiff's § 1983 claims *with prejudice* after plaintiff conceded that he had failed to state a federal claim), *vacated and remanded*, 563 U.S. 826 (2011); *Anthony v. Marion County Gen. Hosp.,* 617 F.2d 1164, 1169–70 (5th Cir. 1980) (dismissal of claims *with prejudice* is an adjudication on the merits for purposes of res judicata, making defendant a prevailing party). In *Dean v. Riser*, 240 F.3d 505, 511 (5th Cir. 2001), the Fifth Circuit held that when a plaintiff voluntarily dismisses his claims in a § 1983 action *with prejudice*, the defendant is not a "prevailing party" for attorneys' fees purposes "unless the defendant can demonstrate that the plaintiff withdrew to avoid a disfavorable judgment on the merits."

Kelly attempts to rely on this case law to argue that it should be considered the prevailing party in this case. However, Stockade did not voluntarily dismiss this case with prejudice, but rather did so without prejudice. *See* Dkt. No. 94 (ordering "Plaintiffs' claims against all defendants in this action be dismissed without prejudice" and that "all costs shall be taxed to the party incurring the same."). Under Fifth Circuit precedent, a defendant is generally not a prevailing party when the plaintiff dismisses its claims without prejudice. *See Haciendo Records, L.P. v. Ramos,* 718 F. App'x 223, 236 (5th Cir. 2018) (holding that "prevailing-party status is not conferred through a party's voluntary dismissal without prejudice."). This is so because "[t]he voluntary dismissal of a

complaint, without prejudice, does not alter the legal relationship between [the parties]." *Alief Indep. Sch. Dist. v. C.C. ex rel. Kenneth C.*, 655 F.3d 412, 418 (5th Cir. 2011).[2] Trial courts in this Circuit thus generally hold that a defendant is not the prevailing party where the plaintiff voluntarily dismissed the case without prejudice. *See e.g., BHL Boresight, Inc. v. Geo-Steering Sols., Inc.,* 2017 WL 2730739, at *17 (S.D. Tex. June 26, 2017) ("[A] defendant who has the claims against him resolved by voluntary dismissal without prejudice generally is not considered a prevailing party or entitled to an award of attorney's fees."); *Traxxas, LP v. Dewitt*, 2016 WL 6892819, * 2 (E.D. Tex. Oct. 28, 2016) ("Because the dismissal of Defendant was without prejudice, the claims were not adjudicated against him and he is not the prevailing party."); *Lightsource Analytics, LLC v. Great Stuff, Inc.*, 2014 WL 4744789, * 5 (W.D. Tex. Sept. 23, 2014) (holding that defendants were not prevailing parties where plaintiff's case was dismissed without prejudice and there was not judicially sanctioned change in the legal relationship of the parties).

Texas law, as expressed by the Texas Supreme Court, recognizes an exception to this general rule when a plaintiff dismisses its claims in order "to circumvent unfavorable legal restrictions or rulings." *Epps v. Fowler*, 351 S.W.3d 862, 870 (Tex. 2011). In *Epps*, the Court held that "a defendant may be a prevailing party when a plaintiff nonsuits without prejudice if the trial court determines, on the defendant's motion, that the nonsuit was taken to avoid an unfavorable ruling on

---

[2]*See also*, *United States v. Milner*, 583 F.3d 1174, 1196–97 (9th Cir. 2009) ("[A] dismissal without prejudice does not materially alter the legal relationship of the parties, because the defendant remains subject to the risk of re-filing."), *cert. denied*, 130 S.Ct. 3273 (2010); *United States v. Minh Huynh*, 334 F. App'x 636, 639 (5th Cir.) ("Nor does the Government's dismissal without prejudice bestow prevailing party status on Plaintiffs because it effected no 'change in the legal relationship of the parties.'"), *cert. denied,* 558 U.S. 970 (2009); *RFR Indus., Inc. v. Century Steps, Inc.*, 477 F.3d 1348, 1353 (Fed. Cir. 2007) (reasoning that voluntary dismissal that leaves the plaintiff free to refile his claim effects no change in the parties' legal relationship).

the merits." *Id.* To make this determination, courts are directed to draw inferences "from the course of events in the lawsuit." *Id.* "A number of factors may support an inference that a plaintiff has nonsuited in order to avoid an unfavorable ruling," including the timing of the nonsuit, the plaintiff's failure to respond to discovery requests that could support an adverse judgment, or the existence of procedural obstacles, such as the plaintiff's inability to join necessary parties. *Id.* at 870-71.

Kelly relies on *Epps* to insist that it is the prevailing party, arguing that Stockade dismissed this case without prejudice to avoid an unfavorable ruling on the merits of Kelly's Motion to Dismiss. Kelly, however, has failed to carry its burden to demonstrate that Stockade's dismissal was taken to avoid an unfavorable ruling on the merits. Noting that the dismissal followed the district judge denying Stockade's request for a preliminary injunction, Kelly argues that "[i]t is clear based on timing alone that Stockade's 'voluntary' dismissal was filed to avoid an unfavorable merits ruling on its pending trade dress, trade secret and confidentiality claims." Dkt. No. 96 at p. 2. First, the fact that the District Court denied Stockade's Motions for Preliminary Injunctions does not necessarily mean that the District Court would have granted Kelly's Motion to Dismiss. *See M-I, L.L.C. v. Stelly*, 2009 WL 7797235, at *1 (S.D. Tex. Sept. 2, 2009) ("[T]he Court would like to point out that its ruling on Plaintiff's Motion for Preliminary Injunction does not necessarily reflect the Court's opinion on the ultimate merits of Plaintiff's case."); *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 2005 WL 8156669, at *1 (W.D. Tex. May 18, 2005) ("[A]ny determination by the Court of Appeals regarding Curtis-Wright's motion for preliminary-injunction will not be dispositive of all issues of infringement in this case."). As the Fifth Circuit has "cautioned repeatedly," a preliminary injunction is an "extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Bluefield Water Ass'n, Inc. v. City*

10

*of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009) (internal citations and quotations omitted). In contrast, a party may defeat a motion to dismiss without demonstrating a substantial likelihood of success on the merits. *See Broadwell v. Municipality of San Juan*, 312 F.Supp.2d 132, 137 (D.P.R. 2004) ("[T]he standard plaintiffs must surpass in order to succeed on their preliminary injunction claim, likelihood of success on the merits, is higher than the one they must surpass to defeat defendants' motion to dismiss.").

In addition, Stockade did not stop seeking relief on its claims after it voluntarily dismissed this case; rather, Stockade chose to pursue those claims in arbitration. Stockade argues that it voluntarily dismissed this lawsuit after the District Court denied its motions for preliminary injunction because it "simply changed its mind about pursuing permanent injunctive relief in this Court, determining (consistent with its contractual rights) that it was more sensible to consolidate all claims in the arbitration." Kelly has failed to demonstrate that Stockade's proffered reason for the voluntary dismissal was false.

In addition, contrary to Kelly's representations, Kelly did not prevail on all of the issues in this lawsuit. For example, this Court denied Kelly's Motion to Compel Arbitration finding that Kelly's arguments regarding arbitration were "meritless and ignore the plain language of the contract . . . ." Dkt. No. 20 at 6. In addition, on May 31, 2017, the District Court partially granted Stockade's first Motion for Preliminary Injunction. Dkt. No. 26. The Court granted Stockade's request to enjoin Kelly from infringing or otherwise using any of Stockade's proprietary marks. In that order, the Court directed Kelly to de-brand its Sirloin Stockade, Coyote Canyon and Montana Mikes' franchise restaurants within 21 days, which Kelly subsequently did. And the District Court subsequently granted Stockade's Motion for Expedited Discovery in the case. Dkt. No. 50. Thus,

while the District Court denied Stockade's second and third motions for preliminary injunction, Stockade was successful on other issues in the case.

Based upon the foregoing, Kelly has failed to demonstrate that it is the prevailing party in this case. But even if Kelly had met the threshold requirement that it was the prevailing party under Rule 54, it would still not be entitled to attorneys' fees under the specific statutes and Rules it relies on, as explained below.

**2. Section 19.11 of the Franchise Agreements**

First, Kelly argues that it is entitled to attorneys' fees under Section 19.11 of the Franchise Agreements, which provides:

> 19.11 <u>Attorneys Fees.</u> Notwithstanding anything in this Agreement to the contrary, *if either party institutes a legal proceeding*, including court proceeding or arbitration, *and prevails entirely or in part in any action at law or in equity against the other party* based entirely or in part on the terms of this Agreement, the prevailing party shall be entitled to recover from the losing party, in addition to any judgment, reasonable attorneys' fees, court or arbitrators costs and all of the prevailing party's expenses in connection with any action at law.

Dkt. No. 1-2 at p. 48 (emphasis added). As clearly stated above, the Franchise Agreements only allow a prevailing party to recover attorneys' fees if that party "institute[d] the legal proceeding." Here, Kelly did not institute any proceedings in this Court and thus is ineligible for attorneys' fees under Section 19.11 of the Franchise Agreements.

**3. Section 134A.005 of the Tex. Civ. Prac. & Rem. Code**

Next, Kelly relies on the Texas Uniform Trade Secrets Act ("TUTSA"), TEX. CIV. PRAC. & REM. CODE § 134A.005(1), for its request for fees, arguing that Stockade's trade secret claim was made in bad faith. Section 134A.005(1) of the TUTSA provides that a court "may award reasonable attorney's fees to the prevailing party if. . .a claim of misappropriation is made in bad faith." The

TUTSA does not define bad faith and the Texas Supreme Court has not addressed this issue. However, courts interpreting other UTSA-based state statutes have found that bad faith requires evidence that the claim was entirely baseless or specious and that the claim was taken in subjective bad faith or for other improper purposes.[3]

Kelly has not made a persuasive case that there is clear evidence that Stockade's trade secret claim was entirely without merit and taken for any improper purpose. The fact that the District Court denied Stockade's Motion for Preliminary Injunction with regard to its trade secret claim does not mean that the claim was brought in bad faith. Kelly has failed to provide the Court with sufficient factual allegations to support a finding of bad faith in this case. *See Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*, 2017 WL 5572616, at *3 (E.D. La. Nov. 20, 2017) (holding that defendant's counterclaim failed to state a claim for attorney's fees under the TUTSA because it failed to allege sufficient factual allegations to support a finding of bad faith); *McKesson Med.-Surgical Inc. v. Micro Bio-Medics, Inc.*, 266 F. Supp. 2d 590, 597 (E.D. Mich. 2003) (denying defendants' request for attorneys fees where they failed to persuade the Court that was clear evidence that the action was entirely without color and taken for improper purposes amounting to bad faith).

---

[3] *See e.g., Gabriel Technologies Corp. v. Qualcomm Inc.*, 560 F. App'x 966, 973 (Fed. Cir. 2014) (finding that a party seeking fees under CUTSA must demonstrate that the trade secret claim was objectively specious and was brought in bad faith or for an improper purpose); *Hill v. Best Medical Int'l Inc.,* 2011 WL 6749036, * 3 (W.D. Penn. Dec. 22, 2011) (finding that indications of bad faith include evidence that claims were meritless or that hte motive for filing the suit was for an improper purpose such as harassment); *Contract Materials Processing, Inc. v. Kataleuna GmbH Catalysts*, 222 F. Supp. 2d 733, 744 (D. Md. 2002) ("To succeed on a request for attorney's fees under the MUTSA, there must be "clear evidence that the action [was] entirely without color and taken for other improper purposes amounting to bad faith.'"); *JLM Formation, Inc. v. Form+PAC*, 2004 WL 1858132, *1-2 (N.D. Cal. Aug. 19, 2004) (holding that in order state a claim for attorneys fees under UTSA, the defendant must demonstrate claim was objectively specious and based on subjective misconduct).

### 4. Fed. R. Civ. P. 41(d)

Finally, Kelly argues that it is entitled to attorneys' fees and costs under Rule 41(d), which states:

> If a plaintiff who previously dismissed an action in *any court* files an action based on or including the same claim against the same defendant, *the court*:
>
> (1) may order the plaintiff to pay all or part of the costs of that previous action; and
> (2) may stay the proceedings until the plaintiff has complied.

FED. R. CIV. P. 41(d) (emphasis added).[4] The Court agrees with Stockade's interpretation that a plain reading of Rule 41(d) reveals that it applies only to two sequential lawsuits, not a lawsuit and (here) an overlapping arbitration. The use of the "the court" in the Rule clearly applies to a subsequent court. Thus, only the subsequent court, not a subsequent arbitrator, can impose costs under Rule 41(d).

Fifth Circuit precedent also dictates that Rule 41(d) only applies to two sequential lawsuits in the same court. The Fifth Circuit "has repeatedly vacated sanctions that punish conduct that did not occur in front of the district court." *Portillo*, 872 F.3d at 740 n. 29. For example, in *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 463 (5th Cir. 2010), the Fifth Circuit held that the district court had no power to sanction conduct that occurred in an arbitration proceeding and pointed out that the defendant could have asked the American Arbitration Association to re-open the proceedings so it could request that the arbitrator award sanctions. Similarly, in *FDIC v. Maxxam, Inc.*, 523 F.3d 566, 593–94 (5th Cir. 2008), the Fifth Circuit vacated

---

[4]While there is a split among the Circuits as to whether attorneys' fees incurred in the previous action are recoverable as "costs" under Rule 41(d), the Fifth Circuit has recently held that "[f]ee awards are permitted under Rule 41(d) only if the underlying statute defines 'costs' to include fees.'" *Portillo v. Cunningham*, 872 F.3d 728, 739 (5th Cir. 2017).

a fee award, in part because it sanctioned conduct that occurred in an administrative court proceeding. It explained, "We are persuaded that in imposing the $50 million in sanctions for an administrative proceeding in Washington, DC, the district court abused its discretion, and that only the costs related to the district court proceedings are sustainable." *Id.* at 593. Accordingly, it would be improper for this Court to sanction conduct occurring before an arbitrator.

Based upon the foregoing, the Court does not find that Kelly is not entitled to attorneys' fees under Rule 41(d).

**C.    Conclusion**

As stated above, the Court finds that Kelly was not a "prevailing party" as meant by Rule 54(d)(1). Even if it were a prevailing party, Kelly has failed to demonstrate that it is entitled to attorneys' fees and costs under Section 19.11 of the Franchise Agreements, Section 134A.005 of the Texas Civil Practices & Remedies Code or Federal Rule of Civil Procedure 41(d). Accordingly, Kelly's Opposed Motion for Attorneys' Fees and Costs (Dkt. No. 96) is **DENIED**.

SIGNED this 15th day of June, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE